# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SMITH V. YANCEY.

NOVEMBER 12th, 1885.

WILLS—*Construction—Case at bar.*—Testator made his will and died in 1852. His wife died in 1883. By clause 6 he directed all his estate (slaves excepted) at the death of his wife, "to be equally divided between my thirteen nephews and nieces, it being understood that from Wm. Smith's children's share is to be deducted such debts as I hold against their mother and father, which debts I authorize and direct to be cancelled."

HELD :

> The debts due testator from Wm. Smith and wife are cancelled at the death of testator, and their amount as of that date, 1852, should be deducted from Wm. Smith's children's share of testator's estate, as of his wife's death, 1883.

Argued at Staunton and decided at Richmond.

Appeal from decree of circuit court of Rockingham county, rendered October 24th, 1884, in a chancery cause, wherein Haas and Conrad, trustees, are complainants, and James W. Smith and others are defendants.

Opinion states the case.

*Robert Johnston* and *Jas. Kenney,* for the appellants.

*W. B. Compton* and *E. S Conrad,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The record discloses the following case: Edward H. Smith, a wealthy citizen of Rockingham county, Virginia, died April 24th, 1852, after having made and published his last will and testament, which was duly admitted to probate in the county court of Rockingham county, at its June term, 1852. The said will bears date April 24th, 1852, and the controversy in the case is, as to the construction of the sixth and last clause, which is in these words: "Sixth and lastly, at the death of my wife, I direct that all of my slaves are to be emancipated, and provision be made out of my estate *to* to transport them out of Virginia, by my surviving executor, and of my real and personal property, it is then to be equally divided between my thirteen nephews and nieces, it being understood that from William Smith's children's share is to be deducted such debts as I hold against their mother and father, which debts I authorize and direct to be cancelled."

The widow, Julia Smith, died February 4th, 1883, at which time the estate passed, under the will, to the thirteen nephews and nieces, who are the children of the testator's deceased brother, William J. Smith, and of his two sisters, Mrs. Harris and Mrs. Yancey. After the death of the widow, Julia Smith, in 1883, a bond was found among her papers, and filed in this cause, as the debt alluded to by the testator in the said sixth and last clause in his will. This bond was executed by Jane Smith, the widow of William J. Smith, to M. H. Harris, administrator of William J. Smith, for $833.11, dated November 7th, 1833, and payable nine months after date. It had been assigned by the said M. H. Harris, administrator, to E. H. Smith, the testator, on December 20th, 1833, before maturity.

In 1833, the said M. H. Harris, who was brother-in-law both to William J. Smith and the testator, E. H. Smith, qualified as the administrator of William J. Smith, deceased, with the tes-

tator, E. H. Smith, as surety upon his official bond, in the county court of Mason county, Virginia; and at the November term, 1833, of the county court of Rockingham county, Virginia, E. H. Smith, the testator, qualified as guardian of the three infant children of William J. Smith, deceased. There has not been, so far as the record shows, any settlement of either the administration or guardianship accounts.

The circuit court, in the decree complained of, rendered October 22d, 1884, held that the said bond for $833.11, executed by Jane Smith, the widow of William J. Smith, deceased, November 7th, 1833, payable to M. H. Harris, administrator of William J. Smith, deceased, and assigned to the testator, E. H. Smith, December 20th, 1833, by the said Harris, administrator, as aforesaid, is within the description of the debts mentioned by the testator in the said sixth clause of his will; and that it bore interest up to the death of the widow, Julia Smith, in 1883; and that, as such, it is chargeable against the interest devised by the testator to the children of his brother, William J. Smith, deceased.

We are of opinion that the circuit court correctly held that William J. Smith's children's share in the bounty of the testator, is chargeable with the debt held by the testator, as assignee, evidenced by the bond of their mother, executed and delivered by her to M. H. Harris, administrator of her deceased husband, for the value of personal property belonging to his estate, which she retained, because the sixth and last clause of the will of the testator, after directing an equal division of his real and personal property, after the death of the life-tenant, his widow, between his thirteen nephews and nieces, says: "It being understood that from William Smith's children's share is to be deducted such debts as I hold against their mother and father, which debts I authorize and direct to be cancelled." The testator held the Jane Smith bond for $833.11, dated No-

vember 7th, 1833, payable nine months after date to M. H. Harris, administrator of William J. Smith, deceased, and assigned by said Harris, administrator, to E. H. Smith, the testator, December 20th, 1833, for value received; and this bond, so far as the record shows, is the only bond or evidence of debt against either their mother or father which the testator did hold. It comes within the phrase "such debts as I hold against their mother and father," used by the testator.

But we are further of the opinion that the circuit court did err in its construction of the remaining words of the same sixth and last clause—"which debts I authorize and direct to be cancelled"—by which the Jane Smith bond is made to carry interest up to the death of the life-tenant, Julia Smith, in 1883, a period of half a century; and in decreeing that the said bond, with all its long accumulation of interest, shall be deducted from William Smith's children's share in the distribution of the testator's bounty under his will.

The testator, E. H. Smith, made his will April 24th, 1852, *and died that day*. The will spoke from that event; and the legal effect was, *ipso facto*, to cancel—to annul and destroy— all "such debts as (he, the testator) I hold against their mother and father." The Jane Smith debt, evidenced by her bond held by the testator, was released by the direct effect and express direction of the will. Such was the intention of the testator, and such was the effect. The right of action for the debt was gone, and it ceased to be a debt of Jane Smith's. "Where a personal action (and a debt is merely a right to recover the amount by way of action) is suspended by the voluntary action of the party entitled to it, it is forever gone and destroyed." 2 Lomax Ex'or, 186.

We see no trace of any intention by the testator that the debt which he held against Jane Smith, the widow of his brother, who had been, at the date of the will, dead for twenty

years, should accumulate during the life of the tenant for life, and thereby practically and virtually defeat the very rule of division—*equality*—which the express terms and obvious intendment of the will ordained between the testator's thirteen nephews and nieces.

It is contended by the appellants, on the one hand, that the testator intended to treat the bond of his brother's widow, Jane Smith, as an *advancement* to the children; and, as such, upon the principle of *Barrett* v. *Morris*, 33 Gratt. 273, to be charged or deducted from their share in the estate at the period of distribution (which, in this case, is the death of the life-tenant in 1883), without interest; while, on the other hand, the appellees insist that the debt shall not be cancelled, but shall bear interest up to the death of the life-tenant. In this view of the appellees the circuit court construed the will.

We think it plain that the testator recognized the existence and obligation of the Jane Smith debt—principal and interest—up to the date of his death; and, by the express words of his will, then and thereby defined the debt and cancelled it—annulled and destroyed it—put it to legal death—*quoad* Jane Smith, against whom, living or dead, it could not be operated; except, indeed, by creditors in default of a sufficiency of other assets of the testator; yet, it is equally obvious and certain that he did not intend to postpone the cancellation of the debt till the death of the life-tenant; as well because he did not say so, as that it is *reductio ad absurdum* to *cancel* a debt, only by and when it *shall be paid in full!*

The testator had a right to clog or qualify his bounty to his nephews and nieces as he pleased; and he simply directed, that, *at the death of his widow,* his real and personal property should be divided equally between his thirteen nephews and nieces—it being understood that from William Smith's children's share is to be deducted such debts as he held against their

mother, Jane Smith, *at that writing;* but which, at his death, by the operation of his will, would cease to have being; and which, of course, could bear no further interest.

The proper construction of the will, is to charge or deduct from the distributive share of William Smith's children in the estate of the testator, the amount of their mother, Jane Smith's bond for $833.11, with interest from its maturity, up to the death of the testator, Edward H. Smith, April 24th, 1852; and to credit them with their distributive or proportionate share of this (three thirteenths), as well as of the other assets or estate of the testator, after the death of the life-tenant, Julia Smith.

The decree of the circuit court of Rockingham, complained of, is erroneous, and must be reversed and annuled; and the cause remanded to said court for proceedings in accordance with the principles herein expressed.

DECREE REVERSED.

LEWIS, P., dissented.